UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| SOUTH ELKHORN VILLAGE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF GEORGETOWN, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 5:25-259-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on a motion to dismiss (R. 12) filed by Georgetown Municipal Water and Sewer System ("GMWSS"); Les Jarvis, Glen Williams, Lewis Wolfe, Jason Baird, and Jeff Klocke (collectively, the "Commissioners"); and Chase Azevedo (all together, "GMWSS Defendants"). This matter is also before the Court on a motion to dismiss (R. 14) filed by the City of Georgetown (the "City"). The Court will refer the GMWSS Defendants and the City collectively as "the Defendants." For the following reasons, the Defendants' motions are granted.

## I. FACTUAL BACKGROUND

This case arises from the delayed approval of water and sewer connections from the City's municipal systems to a commercial property (the "Property") located in Georgetown, Kentucky. Plaintiff, South Elkhorn Village, LLC ("SEV") purchased the Property in 2017, which originally consisted of 1.441 acres of undeveloped land. SEV applied for water and sewer connections for the Property in July 2022 but, for various reasons, its application was not approved by the GMWSS Defendants until January 2025.

### *The Property's Plat Approval and Sewer Certification History*

In 1994, a minor subdivision plat (the "1994 Plat") for the property was recorded with the Scott County Clerk's Office. (*Id.* ¶ 16.) The 1994 Plat originally contained three tracts of land. (*Id.*) The purpose of the 1994 Plat was to split the then-existing Tract 2 to create a fourth tract. (*Id.*, R. 1-10 at 2.)

The 1994 Plat contained a Certification of the Available Capacity for Sewer Service, (the "Sewer Certification") which was dated June 28, 1994 and signed by GMWSS's general manager at that time. (*Id.* ¶ 17.) The Sewer Certification stated:

> I hereby certify that Georgetown Municipal Water & Sewer Service (GMWSS) has the capacity within the sewer collection system to supply the TRACT 2 & 4 with sewage disposal services. Provision of service will be contingent upon the review and approval of all on-site and off-site plans and specifications for the proposed system, construction of the sewer collection system by/at the cost of the developer, built to (GMWSS) specifications and approval by (GMWSS) of the as-built improvements and/or the bonding amount. Authorized by company official.

(*Id.*)

In February 2006, a Minor Consolidation and Subdivision Plat dated October, 3, 2005 (the "2005 Plat") was recorded in the Scott County Clerk's Office. (*Id.* at ¶ 18.) The purpose behind the 2005 Plat was to consolidate Tract 4 with Tract 2, and then to subdivide Tract 2 into Tracts 2A, 2B, and 2C. (*Id.* at ¶ 18, R. 1-11 at 2.) The Property is designated in the 2005 Plat as Tract 2A. (*Id.*) The 2005 Plat includes a Certification of Final Subdivision Plat Approval, denoting that the plat complied with the Subdivision and Development Regulations for Georgetown and Scott County. (*Id.* ¶ 19.) The 2005 Plat could not have been "approved by the [Georgetown-Scott County Joint] Planning Commission without confirmation from GMWSS that it has the capacity to service a new sewer connection." (*Id.* ¶ 26.)

In 2017, SEV purchased the Property, designated on the 2005 Plat as Tract 2A. (*Id.* at ¶ 14.) SEV negotiated a 30-year ground lease with a potential tenant based on the assumption that it would be able to gain sewer access for the Property. (*Id.*) At that point in time, the Property was not connected to the City's water and sewer system. It was not until July 2022 that SEV requested a connection.

### *GMWSS Manual No Longer Honors the 1994 and 2005 Sewer Certification*

Created in 2021 and revised in 2022, GMWSS implemented a Water Distribution System Manual (the "GMWSS Manual") which provided new rules for connecting to the City's water and sewer systems. (*Id.* ¶ 28.) Specifically, the GMWSS Manual set forth new submittal requirements and approval procedures to be used in the planning, design, and construction of infrastructure projects within the [GMWSS] service areas." (*Id.* ¶ 29.) Importantly, section 2.3.2 of the GMWSS Manual states that Sewer Certifications dated before February 17, 2021, will no longer be honored without a current "Availability Request" approved by the GMWSS Commissioners. (*Id.* ¶ 33.)

Section 2.2 of the GMWSS Manual provides the application procedures for submitting an Availability Request. (*Id.* ¶ 32.) This Section provides, in part, as follows:

> Initial request is for OWNER/DEVELOPER to request approval of water and/or sanitary sewer availability of proposed development.
>
> GMWSS evaluates and considers water and/or sanitary sewer Availability Requests in the order in which they are received. The GMWSS Engineering Supervisor maintains an Availability Request Log that includes submittal, approval, and expiration dates for all Availability Requests. The GMWSS Board of Commissioners reserve the right to approve Availability Requests for flows of 2,000 GPD or less in a manner independent of the order in which they were received.
>
> An applicant may request approval of an Availability Request (2,000 GPD or less) for one property only, independent of the order which it was received, once every 12 months. An applicant may not repeatedly request approval of multiple Availability Requests independent of the order in which it was received during the 12-month period.

3

> Once approved by the GMWSS Board of Commissioners, Availability Requests are valid for 12 months from approval date as stated in the approval letter sent from GMWSS to the applicant.

Section 2.2.1 of the GMWSS Manual.

### *SEV's Availability Request and Delayed Approval*

After SEV had negotiated the ground lease on the Property, it contacted GMWSS to ask about establishing the sewer service connection. (*Id.* ¶ 39.) On July 12, 2022, SEV submitted a revised Availability Request.[1] (*Id.* ¶ 40) SEV was informed by a GMWSS representative that the request had been received and it would be added to "[GMWSS's] waiting list for capacity at Wastewater Treatment Plant #1." (*Id.*) When following up on the pendency of its Availability Request, SEV alleges that Defendant Azevedo "made it clear that SEV's Request would not be approved" and "blamed vague issues with GMWSS's sewer capacity as grounds for withholding approval." (*Id.* ¶ 41.)

On September 16, 2022, SEV formally demanded that GMWSS approve its Availability Request. (*Id.* ¶ 42.) On October 21, 2022, a GMWSS attorney responded to SEV's demand and stated that Commissioners did not take any action regarding its availability request. (*Id.* ¶ 43.) The correspondence also stated that "GMWSS will maintain your client's request to connect to the sanitary sewer system in the queue, and will consider it in the order it was received for similar developments when there is adequate capacity to treat additional discharges." (*Id.*)

On January 13, 2023, after going months without approval, SEV filed suit against the Defendants. *See S. Elkhorn Vill., LLC v. City of Georgetown,* Civil Action No. 5:23-CV-5-KKC, R. 1 (E.D. Ky. filed January 13, 2023). That suit asserted claims materially identical to those in the present action. This Court dismissed SEV's complaint without prejudice on March 25,

---

[1] SEV does not mention any prior availability requests in its complaint or briefings. For purposes of this Opinion, SEV's revised Availability Request is the sole Availability Request.

4

2024. (*Id.*) The Court determined that SEV's Takings Clause claims were not ripe because the Availability Request was still pending and that SEV's Due Process claims failed to allege a protected property interest. *S. Elkhorn Vill., LLC v. City of Georgetown,* No. 5:23- CV-5-KKC, 2024 WL 1259443 at *2–3 (E.D. Ky. Mar. 25, 2024).

On January 24, 2025, Defendants conditionally granted SEV's request for a sewer connection. (R. 1 ¶ 55.) SEV then filed another complaint on July 23, 2025, which is the subject of this Opinion. In its complaint, SEV brings claims for: (1) declaratory and injunctive relief; (2) inverse condemnation; (3) a Takings Clause violation under 42 U.S.C. § 1983; a violation of KRS § § 100.285; and (5) negligence. (*Id.* at 11–14.) Both the GMWSS Defendants and the City responded with respective motions to dismiss, with such similar arguments that the Court will address them together in this Opinion.[2] (R. 12, 14.) Now that the motions are ripe for review, the Court will consider the merits of the Defendants' motion.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.

---

[2] Both the GMWSS Defendants and City assert the same defenses and raise the same arguments in their Motions. Additionally, each motion incorporates by reference any "additional or expanded arguments" in their motions. (*See* R. 12n.3, 14-1 n.1.). For these reasons, the Court will consider their Motions jointly.

Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

At its core, this case turns on a whether the delayed approval of SEV's sewer access amounts to a violation of state or federal law. If the delay is legally cognizable under one or more of the claims asserted, SEV has stated a viable claim for relief, and the action must proceed. (*See* R. 1 at 11–14.) If the delay does not violate any of SEV's claims, then the complaint fails as a matter of law and must be dismissed.

### A. Police Powers

The Defendants' primary argument is that all claims against them should be dismissed because the method of approving SEV's sewer request was within the police power afforded to municipalities by the Kentucky Legislature. (R. 12 at 4, R. 14-1 at 4.) SEV contends that broadly claiming "police powers" to insulate the Defendants from liability is rejected in the Sixth Circuit, and such a practice would render the Constitution a "dead letter." (R. 16 at 7–8., R. 17 at 7.)

It has long been recognized that a municipal corporation, pursuant to its police power, has wide latitude to adopt ordinances which promote the health, safety, morals or general welfare of the people. *Lexington Fayette Cty. Food & Bev. Ass'n v. Lexington-Fayette Urban Cty. Gov't*, 131 S.W.3d 745, 749 (Ky. 2004); *Clark v. Louisville*, 117 S.W.2d 614, 616 (1938). A municipal ordinance adopted under the power granted by the legislature is a valid exercise of the police power. *Nourse v. City of Russellville*, 78 S.W.2d 761, 764 (Ky. 1935); *Francis v.*

6

*City of Bowling Green*, 82 S.W.2d 804, 806 (Ky. 1935). Regulating water and sewer systems falls within a municipality's police power. *City of Covington v. Sanitation Dist. No. 1 of Campbell & Kenton Ctys.*, 301 S.W.2d 885, 889 (Ky. 1957); *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Town of Strathmoor Vill.*, 211 S.W.2d 127, 129 (1948); *Clark*, 117 S.W.2d at 616. The constitutional limitation upon the exercise of police power to regulate health is a matter of reasonableness. *Commonwealth v. Do, Inc.*, 674 S.W.2d 519, 521 (Ky. 1984).

In 1980, the Kentucky General Assembly enacted various legislation known commonly as "home rule" which permitted cities to act without specific statutory authorization. *Lexington Fayette Cty. Food & Bev. Ass'n v. Lexington-Fayette Urban Cty. Gov't*, 131 S.W.3d 745, 749 (Ky. 2004); *Lexington-Fayette Urb. Cty. Gov't v. FOP*, No. 2023-SC-0445-DG, 2025 Ky. LEXIS 206, at *21 (Sep. 18, 2025). Kentucky's home rule provides:

> (1) A city may exercise any power and perform any function within its boundaries, including the power of eminent domain in accordance with the provisions of the Eminent Domain Act of Kentucky, that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute.
>
> (2) A power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes.

KRS § 82.082. By way of this statute, the General Assembly has "broadly delegated" all powers necessary to further a public purpose. *Lexington-Fayette Urb. Cty. Gov't,* 2025 Ky. LEXIS 206, at *22.

This broad power is not always precluded simply because the legislature has taken some action in regard to the same subject. *See Lexington Fayette Cty. Food & Bev. Ass'n*, 131 S.W.3d at 750. The true test of the concurrent authority of the state and local government to regulate a particular area is the absence of conflict. *Id.* The simple fact that the state has made certain regulations does not prohibit local government from establishing additional requirements so long as there is no conflict between them. *Id.* Concurrent local regulation is

7

valid unless it is unreasonable and oppressive and conflicts with state regulation. *Lexington Fayette Cty. Food & Bev. Ass'n*, 131 S.W.3d at 750 (citing *City of Ashland v. Ashland Supply Co.,* 7 S.W.2d 833 (Ky. 1928)). Because the Defendants' authority is limited by 82.082(2), it is necessary to determine if there is an express statutory prohibition or a comprehensive legislative scheme already in place. *Id.*

### i. KRS § 100.285 is Not in Conflict with KRS § 82.082

SEV argues that the Defendants do not have home rule authority because Kentucky's General Assembly has a comprehensive legislative scheme governing subdivision plats already in place. (R. 16 at 8, *see also* KRS § Chapter 100.) SEV maintains that exclusive authority to revoke or amend an approved plat rests with the Planning Commission and that the delayed withholding of its Availability Request permitted under § 2.3.2 of the GMWSS manual effectively constitutes a revocation of the previously approved plat. (R. 1 at ¶ 52.) SEV therefore contends that Defendants' actions conflict with state law and that Defendants may not rely on general police power or home rule authority, as limited by KRS § 82.082(2).

In this case, Kentucky's home rule statute applies. As previously noted, water and sewer services serve a public purpose. *See City of Covington*, 301 S.W.2d at 889. Regulating water and sewer systems promotes public health and general welfare. By way of granting authority to municipalities under KRS § 82.082, the Defendants have authority to regulate water and sewer services within its jurisdiction. Inherent in its authority to provide and regulate water and sewer services is the Defendants' discretion in creating a system for connection requests.

Contrary to SEV's assertions, Defendants' granted authority does not conflict with KRS § 100.285. KRS § Chapter 100 establishes the comprehensive framework under which Kentucky cities may enforce planning, zoning, subdivision regulations, and land use controls. Section 285 of Chapter 100 specifically deals with revoking a subdivision plat:

**100.285 Revocation of subdivision plat.**

(1) Upon application of all persons owning land comprising a subdivision, the planning commission may revoke the approval of a subdivision plat, including all dedications of public facilities, easements and rights-of-way.

(2) Before any plat shall be revoked, all owners shall, as part of their application for revocation, state under oath that no person has purchased a lot shown on the plat.

(3) A revocation shall become effective only upon:

(a) A notation on the margin of the recorded plat stating that such plat has been revoked and the date of such vote of revocation; such notation shall be signed by the chairman, secretary, or other duly authorized officer of the commission; and

(b) A written approval of such revocation filed with the commission, duly signed by each entity to which an offer of dedication of any public or private facility, easement or right-of-way was made on the plat.

(4) The remedy provided in this section is in addition to all other remedies provided by law and shall not impair the right of the commission or any interested party from filing an action in Circuit Court for such relief as may be appropriate.

KRS § 100.285.

This section applies to situations where an owner's plat is revoked, i.e., the owner loses ownership of the plat. In no way did GMWSS's delayed approval of SEV's water and sewer hookup revoke SEV's plat. SEV has not asserted that it lost ownership or control over its plat, or that the Defendants did anything other than delay the approval of their connection. Delaying approval of a utility connection does not "in effect" revoke portions of SEV's subdivision plat. (DE 1 ¶ 52.)

SEV's contention is correct that KRS § Chapter 100 is a "comprehensive scheme of legislation." (R. 16 at 8, KRS § 82.082(2).) However, Chapter 100 and the GMWSS Manual regulate different things. Chapter 100 is designed to regulate planning, zoning, and land use. The sections of the GMWSS Manual at issue set guidelines for obtaining utility services, specifically, water and sewer hookups. Although the GMWSS Manual lists rules for

9

connecting water and sewer lines, it does not purport to revoke plats or overtake the responsibilities of the Planning Commission. At worst, the GMWSS manual can be seen as "concurrent local regulation" due to its loose relationship to plats of land, a sector in which the Planning Commission has authority. This type of regulation is approved. *See Lexington Fayette Cty. Food & Bev. Ass'n*, 131 S.W.3d at 750. Accordingly, § 2.3.2 of the GMWSS Manual does not conflict with KRS § 100.285.

Because the Defendants' acted within their authority, their actions are "not subject to judicial review 'except for the limited purpose of considering whether such determinations are arbitrary.'" *Kentucky Bluegrass Experience Resort v. Woodford Cnty. Bd. of Adjustments*, No. 2023-CA-0877-MR, 2025 WL 1829532, at *3 (Ky. Ct. App. July 3, 2025) (citing *Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 467 (Ky. 2005). Making an arbitrariness determination is required for both determining whether the Defendants acted within their police power and whether SEV has a valid Due Process claim. The Court will conduct an analysis for both in the section below.

**B. Due Process Claims**

SEV asserts that the Defendants' delayed approval of its Availability Request violates its substantive and procedural due process rights. (R. 16 at 16.) However, delayed approval of SEV's Availability Request does not establish a deprivation of its constitutionally protected rights. There is not a constitutionally protected property interest in the entitlement to municipal water or sewer service. *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1476 (6th Cir. 1993).

SEV attempts to recast its claim, asserting not a right to sewer service itself, but a broader substantive due process "right to be free from arbitrary and capricious government action." (R. 17 at 13.) Specifically, it argues that:

10

> SEV's property interest is not entitlement to water and sewer services, but instead reliance on an approved subdivision plat that was revoked contrary to law by a body unauthorized to do so employing processes to do so blatantly running afoul of basic due process. In other words, the problem is not just that SEV was not promptly given access, but instead results from the GMWSS revoking SEV's prior *recorded subdivision plat* without authority to do so, in direct conflict with state law, and causing SEV tremendous economic injury.

(R. 16 at 16) (emphasis in original). This reframing fails. SEV's repeated assertion that Defendants "unlawfully retroactively revoked" its previously approved and recorded plat is factually unsupported. (R. 16 at 17.) No revocation occurred, and the recorded plat remains intact. *See supra* § III.A.i.

Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). Arbitrary and capricious acts may justify substantive due process claims. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). "Arbitrariness review is limited to the consideration of three basic questions: (1) whether an action was taken in excess of granted powers, (2) whether affected parties were afforded procedural due process, and (3) whether determinations are supported by substantial evidentiary support." *Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 467 (Ky. 2005) (citing *American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964)).

The Defendants' conduct satisfies each prong of the test and cannot be deemed arbitrary or capricious. First, the management of water and sewer capacity, including rationing and the prioritization of connection requests is consistent with state law, as it falls squarely within the broad home rule authority granted to Kentucky municipalities by KRS § 82.082. Setting up rules for sewer service, establishing a queuing system, and delaying approval was within the Defendants' granted powers. *See* KRS § 82.082; KRS § Chapter 76; *supra* § III.A.

11

Second, SEV does not possess a cognizable property interest in the delayed approval of its sewer certification or in a particular processing timeline for its connection request. In the absence of a protected property interest, no procedural process is required. The language in the 1994 Plat's Sewer Certification specifically states that "provision of service will be contingent upon the review and approval of all on-site and off-site plans and specifications for the proposed system . . ." (R. 1 ¶ 17.) This language does not create an unwavering right to immediate approval. The express language of the Sewer Certification states that approval is contingent on review with "off-site plans" being one of the considerations. Accordingly, the Sewer Certification does not create an indefinite right to approval 28 years later.

Even assuming, arguendo, that SEV held such an interest, Defendants afforded adequate process by placing SEV's revised request in a first-come-first-serve queue and communicating its status on multiple occasions. (R. 1 ¶ 43.) SEV has not alleged enough to support a claim that the Defendants have unreasonably or arbitrarily delayed the approval process for sewer service, nor has it sufficiently alleged that the Commissioners have acted in bad faith during the approval process.

Finally, Defendants' decision to defer approval enjoys ample evidentiary support: SEV's request demanded 22,000 gallons per day at because the plant was undergoing renovations, necessitating careful allocation to preserve service for existing customers and to avoid overloading the system. (R. 14-1 at 8). A resource-allocation decision grounded in legitimate capacity constraints and made pursuant to a neutral queuing protocol is not arbitrary or capricious. SEV was made aware of the Defendants' rationale by the October 21, 2022 correspondence. (R.1 ¶ 42.) The Defendants' reasoning is further supported by the Defendants' January 24, 2025 approval of only 8,800 gallons per day. (R. 1-12 at 2.) Because the Defendants' actions were reasonable in light of the circumstances, their actions were not

12

arbitrary or capricious. Accordingly, because the Defendants acted within their police powers, SEV's due process claims must be dismissed.

### C. Inverse Condemnation

SEV's inverse condemnation claims share a common theme with its KRS § 100.285 and Due Process claims. SEV argues that the Defendants' actions in delaying approval of its sewer access, ignoring the prior Sewer Certification, and adding additional requirements as part of its conditional approval violates the Kentucky Constitution and the United States Constitution. (R. 1 ¶ 64.) SEV alleges that the delayed approval caused it to lose its prospective tenant, and deprived it of all economically viable use of its property. (R. 16 at 11.)

"Inverse condemnation is the term applied to a suit against a government to recover the fair market value of property which has in effect been taken and appropriated by the activities of the government when no eminent domain proceedings are used." *Commonwealth, Natural Resources & Environmental Protection Cabinet v. Stearns Coal and Lumber Co.*, 678 S.W.2d 378, 381 (Ky. 1984). A taking is generally defined as the entering upon private property and devoting it to public use so as to deprive the owner of all beneficial enjoyment." *Id.*

This Court has already dismissed SEV's inverse condemnation claim under federal law. *S. Elkhorn Vill., LLC*, 2024 WL 1259443 at *4. The Sixth Circuit has long held that § 1983 provides the exclusive remedy for federal constitutional violations under color of state law. *Smith v. Kentucky*, 36 F.4th 671, 676 (6th Cir. 2022); *see also Foster v. Michigan*, 573 F.App'x 377, 391 (6th Cir. 2014). To the extent SEV still seeks to bring federal inverse condemnation claims for under the U.S. Constitution outside of § 1983, those claims are dismissed.

Inverse condemnation claims are state creations. *See Knick v. Twp. of Scott, Penn.*, 588 U.S. 180, 186 (2019) ("Pennsylvania, like every other State besides Ohio, provides a state

13

inverse condemnation action."). Kentucky adopted the U.S. Supreme Court's test set forth in " in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) in *Stearns Coal*, 678 S.W.2d 378. Although there is no "set formula," the factors relevant to determine if an act is a taking are: (1) the economic impact of the law on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, (3) the 'character' of the governmental action, that is whether the action is a physical invasion versus a public program adjusting the benefits and burdens of economic life to promote the common good, (4) what uses the regulation permits, (5) that the inclusion of the protected property was not arbitrary or unreasonable, and (6) that judicial review of the agency decision was available." *Penn Central,* 438 U.S. at 124; *Stearns Coal*, 678 S.W.2d at 381.

In evaluating the relevant *Penn Central* factors, the character of the Defendants' action and its reasonableness outweigh both the economic impact on SEV and any interference with SEV's distinct investment-backed expectations.

The governmental action at issue derives from § 2.3.2 of the GMWSS Manual which resulted in the delayed approval of SEV's water and sewer connections. As discussed previously, no physical invasion of SEV's property occurred, and its plat was not revoked. The Defendants applied an established capacity-based queuing system that prioritized applications according to available infrastructure capacity and the date of submission. (R. 12 at 3, 14-1 at 3.) Such a system, designed to ensure the orderly and sustainable allocation of limited public resources, falls squarely within the Defendants' legitimate police power authority to promote the common good. Additionally, the Defendants' placement of SEV's applications within that queue, and the delayed approval of the requested connections, were neither arbitrary nor unreasonable. *See supra* § III.B.

Although the Court acknowledges SEV's assertion that the delayed approval process caused it to lose a prospective tenant and prevented it from securing a replacement lease,

14

these economic consequences do not rise to the level of a compensable taking. (R. 1 ¶ 57.) Construing SEV's loss of a prospective tenant here as a regulatory taking would create a perverse incentive: it would encourage commercial landlords and tenants to enter leases before obtaining all required governmental approvals, with the security that any subsequent delay or denial could be grounds for bringing an inverse condemnation action. The Defendants exercised their lawful authority, even though that exercise was slower than SEV would have preferred. The risk that a prospective tenant might walk away while SEV's approval request is in queue is an ordinary part of doing business; it is not a constitutional violation.

Whether the inverse condemnation claim is brought under § 1983 or under Kentucky law, is immaterial. Regardless of form, an inverse condemnation action does not lie because the actions alleged here are within the Defendants' authority. Because of this, SEV cannot establish that the Defendants' conduct amounts to a taking, thereby making it impossible to prove an inverse condemnation claim. For that reason, SEV's inverse condemnation claim is dismissed.

### D. Negligence

SEV also brings a negligence claim against the Defendants, asserting that they breached their duty to perform the "ministerial task" of timely approving the sewer connections. (R. 1 ¶ 60, 16 at 23.) Defendants argue that the negligence claim should be dismissed because they are immune by statute and owed no duty to SEV in the first place. (R. 12 at 15, 14-1 at 12.)

Kentucky's Claims Against Local Governments Act ("CALGA"), *inter alia,* provides statutory immunity to "local governments." *See* KRS § 65.2000. Local governments are defined as "any special district created or controlled by a local government." *Id.*

KRS § 65.2003(3) provides that a local government "shall not be liable for injuries or losses resulting from:"

> (3) Any claim arising from the exercise of judicial, quasihelical, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:
>
> (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;
>
> (b) The failure to enforce any law;
>
> (c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;
>
> (d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or
>
> (e) Failure to make an inspection."

KRS § 65.2003(3).

CALGA does not immunize municipal officials "from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties." A ministerial act is "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citing *Franklin County v. Malone*, 957 S.W.2d 195, 201, 44 10 Ky. L. Summary 18 (Ky. 1997)). The question of duty is a matter of law. *Mason v. City of Mt. Sterling*, 122 S.W.3d 500, 505 (Ky. 2003) (citing *Green v. Hollingsworth,* 35 Ky. 173, 174 (1837).) "In reality, a ministerial act or function is one that the government employee must do 'without regard to his or her own judgment or opinion concerning the propriety of the act to be performed.'" *Marson v. Thomason,* 438 S.W.3d 292 (Ky. 2014).

Discretionary duties, on the other hand, do not subject municipalities to liability. KRS § 65.2003(3). "[D]iscretionary acts or functions are those that necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Haney v. Monskey*, 311 S.W.3d 235, 240 (Ky. 2010). A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines how or whether to utilize or apply existing resources. *Gas Serv. Co. v. London*, 687 S.W.2d 144, 151 (Ky. 1985).

The lawsuit here arises from the exact forms of judgment and discretion identified in KRS § 65.2003(3). Under that subsection, delayed approval does not subject the City to any liability, even if some ministerial aspects are involved in the decision. *See Greenway Enters. v. City of Frankfort*, 148 S.W.3d 298, 302 (Ky. Ct. App. 2004). The decision to delay SEV's Approval Request in the queue and thereby delay final approval was a discretionary act of rationing water and sewer resources among competing demands, not a ministerial duty. Both the 1994 Plat's Sewer Certificate and the GMWSS Manual made service availability contingent upon further review and subject to multiple discretionary factors, including the priority of earlier-filed requests, the 2,000 gallon-per-day threshold, and overall system capacity in light of ongoing renovations. Adopting and implementing the GMWSS Manual's queuing system (R. 14-1 at 8) was the very mechanism chosen to allocate water resources, and waitlisting SEV's request ensured capacity remained available for other users. These resource allocation and priority-setting decisions fall squarely within the immunity provided by KRS § 65.2003(3)(d). *See Yanero v. Davis,* 65 S.W.3d at 519.

This case is very similar to *Greenway*. Just like in *Greenway,* SEV was temporarily denied service. SEV's attempt at distinguishing that case is unavailing. SEV continues to rely on KRS § 100.285, claiming their recorded plat creates a duty for the Defendants. Further, SEV argues that once the plat was recorded, "all remaining actions are ministerial

17

in nature as provided under GMWSS' own policies." (R. 16 at 25.) This is not the case. The duty to provide adequate service and maintenance is to the existing service area (customers), not future customers. *Greenway,* 148 S.W.3d at 302. Without a duty, the Defendants are not liable. Because the Defendants have immunity under CALGA, they cannot be sued for negligence. Accordingly, SEV's negligence claim is dismissed.

### E. Injunctive relief.

SEV's complaint states that its suit is, "in part, for injunctive and declaratory relief." (R. 1 at ¶ 10.) However, SEV's complaint makes no mention of what type of injunctive or declaratory relief it seeks. SEV does not demonstrate irreparable harm, nor does it make a specific request for what the Court should declare. Accordingly, to the extent SEV continues to assert claims for declaratory and injunctive relief, its claims are dismissed.

### IV. CONCLUSION

For the aforementioned reasons, the Court hereby GRANTS the Defendants' Motions to Dismiss (R. 12, 14) as follows:

1) SEV's KRS § 100.285 claims are DISMISSED;

2) SEV's Due Process claims are DISMISSED;

3) SEV's inverse condemnation claims are DISMISSED;

4) SEV's negligence claims are DISMISSED;

5) SEV's declaratory and injunctive relief claims are DISMISSED; and

6) the Court will enter a judgment consistent with this opinion.

This 21st day of January, 2026.



Signed By:
*Karen K. Caldwell*
United States District Judge